346 F.2d 985
 65-2 USTC P 12,332
 UNITED STATES of America
v.
Morton M. ROSE, Betsy R. Wittenberg, and Aetna Insurance
Company, AetnaInsurance Company, Appellant.
UNITED STATES of America
v.
Morton M. ROSE, Betsy R. Wittenberg, and Aetna Insurance
Company, Morton M.Rose and Betsy R. Wittenberg, Appellants.
 Nos. 15405, 15406.
 United States Court of Appeals Third Circuit.
 Submitted June 11, 1965.
Decided June 18, 1965, Rehearings Denied Aug. 2, 1965.
 
 Lewis Weinstock, Roy L. Cameron, Jr., LaBrum & Doak, Philadelphia, Pa., for appellants.
 Stephen Paley, Dept. of Justice, Tax Division, Washington, D.C., for appellee (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D.C., Drew J. T. O'Keefe, U.S. Atty., on the brief).
 Before KALODNER, STALEY and FREEDMAN, Circuit Judges.
 STALEY, Circuit Judge.
 
 
 1
 This suit for the recovery of money owed for estate taxes has been brought by the United States against Morton M. Rose and Betsy R. Wittenberg, the administrators of the estate of Morris D. Rose, in their individual capacity and against their surety, the Aetna Insurance Company.[1] The defendants do not deny liability for the amount sought to be recovered[2] but rely solely upon the defense of the statute of limitations applicable to proceedings in court for the collection of a tax.[3] The defendant surety admits that if the individual defendants are liable, it is liable. The district court rejected the defense.
 
 
 2
 The relevant facts are not controverted. On April 3, 1946, the individual defendants in this suit were duly qualified as administrators of the estate of Morris D. Rose and filed a bond in the sum of $180,492.[4] The final account of the administrators was filed with the Orphans' Court of Philadelphia County, Pennsylvania, on March 31, 1948. In July of the same year, they were ordered to distribute the assets of the estate in accordance with the account. This they did, retaining only sufficient funds to pay the estate tax. In December 1949, the following petition was presented by the administrators to the Orphans' Court of Philadelphia County:[5]
 
 
 3
 'In the Orphans' Court of Philadelphia County
 
 
 4
 'Petition to Reduce Bond
 
 
 5
 'The petition of Morton M. Rose and Betsy Rose Wittenberg, administrators of the estate of Morris D. Rose, deceased, respectfully represents:
 
 
 6
 '1. On April 3, 1946, your petitioners were duly appointed administrators of the above named estate and qualified by filing their bond or bonds in the sum of One Hundred Eighty Thousand, Four Hundred Ninety-two Dollars ($180,492.00).
 
 
 7
 '2. On March 31, 1948, your petitioners filed their first and final account as administrators of the above estate. An adjudication thereon was entered on July 14, 1948, whereby, inter alia, petitioners were directed to make distribution to the heirs of the decedent.
 
 
 8
 '3. Your petitioners have complied with this order leaving in their custody only funds or property required to pay any outstanding obligation which may be found to be due as federal estate tax to the United States. That matter is now pending.
 
 
 9
 '4. The maximum federal estate tax that might be assessed will not be in excess of Twenty Thousand Dollars ($20,000.00). The amount of security so heretofore filed is in excess of any amount required to meet any exigency of their trust. The continuance of such amount of security requires the payment of a premium to the bonding company that is acting as surety on such bond and creates an unnecessary hardship and expense to the said estate.
 
 
 10
 'WHEREFORE, your petitioners pray that the security directed to be entered by them be reduced from One Hundred Eighty Thousand, Four Hundred Ninety-two Dollars ($180,492.00) to Twenty Thousand Dollars ($20,000.00). 'And they will ever pray, etc.
 
 
 11
 '(s) PETER P. ZION
 
 Attorney for Petitioners
 
 12
 'By Leonard Green'
 
 
 13
 The surety company in the same proceeding filed the following:
 
 
 14
 'Consent of Surety
 
 
 15
 'The undersigned surety hereby consents to the reduction of their bond or bonds for the sum of One Hundred Eighty Thousand, Four Hundred Ninety-Two Dollars ($180,492.00) to Twenty Thousand Dollars ($20,000.00). 'The Century Indemnity Company
 
 
 16
 '(s) (Illegible)
 
 
 17
 '(SEAL)'
 
 
 18
 Pursuant to the petition and consent, the court entered the following order:
 
 
 19
 'Order
 
 
 20
 'AND NOW, to wit, this 7th day of December, A.D., 1949, upon motion of Peter P. Zion, Esq., attorney for the petitioners, and upon consideration of the within petition, containing approval of surety and satisfaction of award signed by all parties in interest,
 
 
 21
 'IT IS ORDERED AND DECREED that the bond required of the administrators of the above captioned estate be reduced from One Hundred Eighty Thousand, Four Hundred Ninety-Two Dollars ($180,492.00) to Twenty Thousand Dollars ($20,000.00) effective as of August 1, 1948.
 
 
 22
 'By the Court '(s) BOLGER, J.'
 
 
 23
 In 1952, the Tax Court set the tax liability of the estate at $7,337.86. An assessment based on this judgment was made on February 12, 1953.[6] Suit was brought against the estate in 1959 and a default judgment obtained. All execution issued on the basis of that judgment has been returned unsatisfied. The instant suit was commenced on April 26, 1963. In its answer, the surety company cross-claimed against its co-defendants for indemnity.
 
 
 24
 The district court, acting on cross-motions, granted summary judgment to the United States. Although the grounds for the decision are not entirely clear, it does appear that the action, stated to be one brought under R.S. 3467, was treated as one in the nature of an action on the 1959 judgment against the estate. Having reasoned to that point, the court concluded that the suit was governed by the applicable Pennsylvania statute of limitations on judgments, 12 Purdon's Pa.Stat.Ann. 2092-2094. Judged by that standard, the action was clearly timely.
 
 
 25
 We are doubtful that a proceeding brought under R.S. 3467 can be treated as one in the nature of an action on a judgment in these circumstances. The 1959 judgment was obtained against the estate; this suit is one against the estate's officers in their individual capacity. Several of the authorities cited by the district court[7] appear to support its view that R.S. 3467 provides the United States with a separate and independent form of relief in estate tax cases and that suits brought under that statute are confined by the general six-year statute of limitations governing proceedings in court for collection. If, as has been argued, that period of limitation begins to run against the Government at the time of the original assessment against the estate, the instant suit would be barred. We find no need, however, to deal with the problems presented by this argument, for we think that under the particular circumstances of this case arising from the 'petition to reduce bond,' the 'consent of the surety' and order of the Orphans' Court, the individual liability of the administrators to the Government is wholly independent of the liability established under R.S. 3467.
 
 
 26
 It is settled that the judgment of a district court may be affirmed by a court of appeals where the decision of the district court is correct although based on incorrect reasoning. J. E. Riley Investment Co. v. Commissioner,311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940); In re Ko-Ed Tavern, Inc.,129 F.2d 806, 142 A.L.R. 357 (C.A.3, 1942); Century Distilling Co. v. Continental Distilling Co., 106 F.2d 486 (C.A.3, 1939), cert. denied, 309 U.S. 662, 60 S.Ct. 581, 84 L.Ed. 1010 (1940). Such affirmance may be based on any rationale supported by facts incontrovertibly established in the record. Lum Wan v. Esperdy, 321 F.2d 123, 125-126 (C.A.2, 1963).
 
 
 27
 The 'petition to reduce bond' filed by the administrators, Morton M. Rose and Betsy Rose Wittenberg, in the Orphans' Court sets forth that they had distributed the assets of the estate in accordance with the prior order of the Orphans' Court and that all of the remaining funds were being held by them to satisfy the estate tax claim of the United States. They finally declared that they were holding these funds in trust for this purpose and no other. Upon this declaration the Orphans' Court acted and expressly approved the petition, in effect permitting them to obtain possession of the funds for this express limited purpose. The legal consequences of these proceedings were: (1) an express declaration of trust for the benefit of the United States Government; (2) a distribution of those particular funds of the estate by them as administrators to themselves as trustees for the United States.
 
 
 28
 Under these circumstances the United States is not here attempting to establish vicarious liability under 3467, i.e., for disbursing the funds to others before paying the estate tax to the United States. The Government, on the contrary, here is attempting to collect from its trustees the funds which they hold in trust for it. As a matter of law, the Government could petition the Orphans' Court of Philadelphia County to compel the trustees to account, see In re Harbison's Estate, 365 Pa. 486, 76 A.2d 187 (1950), or attach their persons until they do so. 20 Purdon's Pa.Stat.Ann. 2080.751, 2080.752. On the other hand, the United States surely is free to bring this action in the United States District Court, Hickey v. Illinois Central R.R.,278 F.2d 529, 532 (C.A. 7), cert. denied, 364 U.S. 918, 81 S.Ct. 284, 5 L.Ed.2d 259 (1960), to require the trustees to account. There can be no question that the suit, as so understood, is timely. The statute of limitations begins to run against the trust beneficiary with respect to a suit against the express trustee, if at all, when he knows the trust has been repudiated or reasonably should have known it. Pennsylvania Co. for Insurance on Lives and Granting Annuities v. Ninth Bank & Trust Co., 306 Pa. 148, 158 A. 251 (1932). There is no evidence in this record to suggest that the United States could even have known of the trust arrangement for its benefit until some time after the unsuccessful return of execution on the 1959 judgment. It had no reason to inquire into the location of funds it had the right to believe were still in the estate. Nor can the defense of laches be successfully raised against the United States here, for that defense is only available where 'the beneficiary * * * fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable.' Restatement (Second), Trusts 219; In re Meyer's Estate, 173 Pa.Super. 592, 98 A.2d 444 (1953). It is commonly required, for example, that the defendant be substantially prejudiced by the delay. See, e.g., Alker v. Philadelphia National Bank, 372 Pa. 327, 93 A.2d 699 (1953). Neither this nor any other ground for the invocation of laches has been or could be demonstrated in these circumstances. Of course, in any case, neither the statute of limitations nor laches will run against the United States unless a Federal statute particularly permits such. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); United States v. Doman, 255 F.2d 865, 867 (C.A.3, 1958), aff'd, per curiam, sub nom. Koller v. United States, 359 U.S. 309, 79 S.Ct. 755, 3 L.Ed.2d 828 (1959); United States v. Silliman, 167 F.2d 607 (C.A.3), cert. denied, 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948).
 
 
 29
 It will thus be seen that 3467 has no application to this case, and consequently whatever statute of limitations is applicable to it cannot be a defense.
 
 
 30
 The facts in this case can be viewed as requiring the application of an alternative theory of law which equally requires the entry of judgment for the United States.
 
 
 31
 Those, such as the individual defendants here, who receive funds on the representation that they are holding them for another purport to act as agents for that other and undertake a duty to account with respect to such property. Restatement, Restitution 124.[8] Such a duty to account arises when a transaction is ratified by the principal. Restatement (Second), Agency 408. Of course, the filing of the instant suit can be deemed to constitute such ratification on the part of the United States. Restatement (Second), Agency 97. Since the suit was brought on April 26, 1963, the duty of the administrators to account arose at that time, and there can be no question of the statute of limitations.
 
 
 32
 As the facts on which these theories rest are set forth in the complaint and the papers attached thereto, and since the only defense raised in the district court is clearly inapplicable, there can be no bar to granting relief to the United States against the administrators in their individual capacity.
 
 
 33
 The only remaining question is whether the defendant, Aetna Insurance Company, is also liable. At the time the 'petition to reduce bond' was under consideration by the Orphans' Court of Philadelphia County, the surety company in connection therewith filed its 'consent' to the reduction of the bond. It is clear that the surety company with full knowledge of the petition consented to a revision of the terms of its obligation as set forth in the 'petition to reduce bond.' It is, therefore, bound. Restatement, Security 128, comment c. See Central Penn Nat. Bank v. Tinkler, 351 Pa. 123, 40 A.2d 389 (1945).
 
 
 34
 Accordingly, all judgments of the district court will be affirmed.[9]
 
 
 
 [1]
 The answer of the Aetna Insurance Company filed in this case contained a crossclaim in indemnity against the company's co-defendants, Rose and Wittenberg. In granting summary judgment to the United States against all defendants on April 17, 1963, the district court failed to dispose of the crossclaim. Appeals were taken from the orders granting summary judgment by Aetna at No. 14988 and by Rose and Wittenberg at No. 15071. The cases were argued on February 12, 1965. Since, of course, the judgment of a district court is not final and, therefore, not appealable until all claims which are part of the same action have been adjudicated, F.R.Civ.P. Rule 54(b), we are required to dismiss those appeals for lack of jurisdiction and do so today in an order filed simultaneously with this opinion
 As the questions involved had, however, been fully briefed and argued and the failure to have judgment entered on the crossclaim was probably a result of inadvertence, we permitted the parties, on their motion, to (1) apply to the district court to enter judgment on the crossclaim and (2) to file notices of appeals from the earlier determinations of the district court and the subsequent determination of the counterclaim. Judgment on the counterclaim has now been entered and appeals have now been filed at Nos. 15405 and 15406. The parties have agreed to submit the matter on the briefs filed and the arguments made in the former appeals.
 
 
 [2]
 In the district court, the suit was treated as one founded on R.S. 3467, 31 U.S.C. 192, which is as follows:
 'Every executor, administrator, or assignee, or other person, who pays, in whole or in part, any debt due by the person or estate for whom or for which he acts before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate to the extent of such payments for the debts so due to the United States, or for so much thereof as may remain due and unpaid.'
 
 
 [3]
 The taxpayer's statute of limitations defense in the district court, despite some confusing labeling, was clearly based on two distinct sections of the Internal Revenue Code of 1939, 900 and 874. In pertinent part, those sections provide:
 '900. Transferred assets
 '(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in the tax imposed by this subchapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):
 '(2) Fiduciaries. The liability of a fiduciary under 3467 of the Revised Statutes (U.S.C., Title 31, 192) in respect of the payment of any such tax from the estate of the decedent.
 'Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.
 '(b) Period of limitation. The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:
 '(1) Within one year after the expiration of the period of limitation for assessment against the executor.
 '(2) If a court proceeding against the executor for the collection of the tax has been begun within the period provided in paragraph (1)-- then within one year after return of execution in such proceeding.' '874. Period of limitation upon assessment and collection.
 '(b) Exceptions * * *
 '(2) Collection after assessment. Where the assessment of any tax imposed by this subchapter has been made within the statutory period of limitation properly applicable thereto, such tax may be collected by a distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the executor.'
 The district court found that the suit was barred by neither limitation. As will be seen from the opinion, we need not and have not determined this question.
 
 
 [4]
 The surety at that time was the Century Indemnity Company, corporate predecessor to Aetna
 
 
 [5]
 Copies of the papers next set out in this opinion were attached to the complaint in the present action. There is no dispute that they were duly filed and here authentically reproduced
 
 
 [6]
 The assessment was in the amount of $7,337.86 for the basic tax and $2,451.65 in interest which had accrued to that date
 
 
 [7]
 United States v. Motsinger, 123 F.2d 585 (C.A.4, 1941); United States v. Weisburn, 48 F.Supp. 393 (E.D.Pa., 1943)
 
 
 [8]
 The general propositions of law supported by Restatement citations in the rest of the opinion find abundant support in the Pennsylvania cases. See generally the appropriate sections of the Pennsylvania Annotations to the Restatement of the Law of Agency and the Restatement of the Law of Restitution
 
 
 [9]
 It was stipulated in the district court that affirmance of the orders granting summary judgment to the United States against all defendants requires affirmance of the judgment on the crossclaim in favor of Aetna against Rose and Wittenberg